INHABITANTS OF CHICOPEE *vs.* COUNTY COMMISSIONERS OF HAMPDEN.

On a petition to the county commissioners for the abatement of a tax on the ground of overvaluation by the assessors, the relative value of property subject to taxation is to be ascertained, not by comparison with any particular piece of property assessed to another person, but by comparison with the whole property subject to taxation in the town; and the exclusion of testimony of persons acquainted with the general value of property in the town, that the valuation complained of is not excessive or disproportionate, and is not excessive or disproportionate in comparison with the valuation of other specific parcels of property in the same town, is not necessarily erroneous.

A decision by county commissioners, on a petition for the abatement of a tax assessed upon the property of a manufacturing corporation, that the price for which the stock sold in the market was a conclusive test of the value of the company's real estate and machinery for the purposes of taxation, the corporation owning no other property and owing no debts, is an error for which a writ of *certiorari* will issue.

HOAR, J. The Chicopee Manufacturing Company, feeling aggrieved by the valuation of their real estate and machinery made by the assessors of the town of Chicopee for the purposes of taxation, petitioned the county commissioners of Hampden County for an abatement of the tax assessed upon them. All the preliminary proceedings required by law were regularly had, and upon a hearing of the parties, the commissioners ordered an abatement of a part of the tax. The inhabitants of Chicopee now petition that a writ of *certiorari* may issue, on account of errors in law apparent upon the record of the proceedings of the commissioners; and it was settled in *Gibbs* v. *County Commissioners,* 19 Pick. 298, that in such a case *certiorari* is the appropriate remedy.

The first objection to the proceedings of the commissioners

is this; that the town of Chicopee contended " that the petitioners were not entitled to an abatement, unless they could show that their property was assessed at a higher rate relatively than the other property in the town; and that.for this purpose it was not sufficient for them merely to prove an estimate of the value of their property, made by other parties at a lower sum or price than that adopted by the assessors," and offer to show that the assessment was not excessive or disproportionate, by evidence of persons acquainted with the general value of property in the town, who were called to testify generally to that effect, and by evidence of the like character in regard to other specific parcels of property assessed in the town of Chicopee; but that the commissioners refused to adopt this rule, and rejected the evidence, and held " that the only question open for their consideration, and upon which testimony was admissible, was the fair cash value of the real estate and machinery on the first day of May 1859."

We are of opinion that the position assumed by the town before the commissioners was not defensible, taken as a whole, and that the rejection of the evidence offered was not necessarily erroneous. Undoubtedly, the question which the commissioners are to determine is whether the taxpayer has been " overrated," or taxed more than his just proportion; and this involves a consideration of the relative value of property subject to taxation. But this relative value is to be ascertained, not by comparison with any particular piece of property assessed to another person, but by comparison with the whole property subject to taxation in the town. If the person applying to the commissioners has not been assessed for more than his fair proportion of the whole tax assessed, he has no cause of complaint because one of his neighbors has been taxed more and another less than the just proportion. Evidence that particular parcels of property had been valued at a lower rate would not therefore be sufficient.

On the other hand, we cannot suppose that it was contemplated by the legislature that upon the complaint of a single taxpayer the county commissioners should be obligrd to revise

the entire valuation of a town. The *St.* of 1853, *c.* 319, requires the valuation by the assessors of each estate at its fair cash value, and the oath taken by the assessors is to secure the practical adoption of that rule. The commissioners might rightly assume that this rule had been followed. Unless the ground taken were that the assessors had disregarded their duty in this respect, and assumed some arbitrary rate of valuation for estates generally, which they had not applied to the estate of the petitioner, we can see no necessity for evidence beyond that which would apply to the particular estate upon which an abatement was asked.

But in determining whether the estate of the petitioner had been correctly valued, we cannot doubt that the commissioners erred in deciding that the sales of the stock of a manufacturing company furnished the only test of the value of their real estate and machinery for the purposes of taxation. It is true that it was shown that the corporation owned no other property than this real estate and machinery, and that they owed no debts ; and these circumstances perhaps made this species of evidence admissible. But it certainly could not be conclusive, if indeed it could be considered to any great extent trustworthy. The price which an undivided seven-hundredth part of any estate would command in the market, could hardly, in any case, be a test of the value of the estate as a whole. But when it is considered that it is an interest in an estate incapable of partition, an estate the use and employment of which is to be controlled by the will.of the majority of owners, and which is to be subjected to the risks of such a business as that majority may choose to carry on with it; when its productive value may depend entirely upon the integrity and skill of the persons having a predominant influence in its management, or of those whom they may choose to employ ; it is obvious that a share subject to these contingencies might be of very little value, and yet the market value of the whole estate be proportionately much greater.

In adopting this arbitrary standard of value, and rejecting all other evidence, however competent and appropriate to the issue,

a manifest wrong was done, which it is the duty of this court to correct, and the writ of *certiorari* must therefore issue.

*J. Wells*, for the petitioners.

*R. A. Chapman*, for the respondents.